IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NANCY LEE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 17-2836 |
| | * | |
| JAMES N. MATTIS, *et al.*, | * | |
| Defendants. | * | |

\****** 

## MEMORANDUM OPINION

Pending in this employment discrimination case is a motion for partial dismissal of the complaint filed by Defendant The Geneva Foundation at WRNMMC ("Geneva"), ECF No. 24, a motion to dismiss the complaint filed by Defendant The Henry M. Jackson Foundation for the Advancement of Military Medicine[1] ("HJF"), ECF No. 18, and a motion to dismiss the complaint, or in the alternative, for summary judgment filed by Defendant James N.  Mattis ("the Department of Defense" or "DOD"), ECF No. 37.  The issues have been fully briefed, and the Court now rules because no hearing is necessary.  For the reasons stated below, Geneva's motion to dismiss is GRANTED in part and DENIED in part, HJF's motion to dismiss is GRANTED in part and DENIED in part, and DOD's motion to dismiss or for summary judgment is GRANTED.

## I.    BACKGROUND

Plaintiff Nancy Lee ("Lee") was hired as a Research Coordinator for The Geneva Foundation at WRNMMC ("Geneva") on or about March 5, 2013.  ECF No. 1 at ¶ 8.  On January 15, 2014, Lee was promoted to the position of Research Associate, a position she held

---

[1] This Defendant is identified solely as the "Henry Jackson Foundation" in the Complaint, but its full name is the "Henry M. Jackson Foundation for the Advancement of Military Medicine."  *See* ECF No. 18-1 at 2.

through her termination on January 28, 2016. ECF No. 1. at ¶¶ 8, 10. Lee is an Asian female. ECF No. 1 at ¶¶ 6–7.

Lee alleges that all Defendants maintain a joint employment relationship with respect to her position. ECF No. 1. at ¶ 9. Defendant James A. Mattis ("the Department of Defense" or "DOD")[2] operates Walter Reed National Military Medical Center ("WRNMMC"), and Defendants Geneva and The Henry Jackson Foundation ("HJF") contract with DOD to conduct research at WRNMMC. Lee asserts that Defendants jointly controlled the essential terms and conditions of Lee's employment, including her duties, priorities, and performance. ECF No. 1 at ¶ 9. For example, at the time of her termination, Lee identifies her immediate supervisors as Xochitl Ceniceros ("Ceniceros"), the Project Manager for Geneva, Christian Walker ("Walker"), Project Manager for HJF, and Dr. Leon Nesti ("Nesti"), the Principal Investigator for the U.S. Army. ECF No. 1 at ¶ 10. Ceniceros, Walker, and Nesti are Caucasian. ECF No. 1 at ¶ 10.

On or about September 30, 2015, Walker became Lee's immediate supervisor. ECF No. 15. Lee asserts that shortly thereafter, Walker began "harassing" Lee with numerous phone calls, emails, and text messages and "an unreasonable workload and deadlines." ECF No. 1 at ¶ 15. Walker also forbade Lee from taking any time off work, including paid time off, and required Lee to work "an excessive amount of overtime." ECF No. 1 at ¶ 17. Lee further alleges that similarly situated employees, including her counterpart at HJF, Carlos Morales,[3] were "not held to the same terms and conditions of employment;" nor did they receive "abnormally frequent" communications from Walker. ECF No. 1 at ¶ 15.

On December 4 and 17, 2015, Lee complained via email to Linzie Wagner, a Caucasion female working for Geneva, about Walker's abusive treatment. ECF No.1 at ¶ 18. Lee

---

[2] Defendant James N. Mattis is so referenced because he was sued in his official capacity as the Secretary of the Department of Defense. *See* ECF No. 1.
[3] Morales is identified as a Caucasian male.

explained to Wagner that Walker was treating others, such as Morales, more favorably. ECF No. 1 at ¶ 19. Lee was advised to speak directly with Walker about her concerns. ECF No. 1 at ¶ 21. Shortly thereafter, Walker was removed as Lee's supervisor, and Lee was thereafter supervised by Ceniceros, a Caucasian female. ECF No. 1 at ¶¶ 10, 22–23. Lee alleges that despite the apparent change in supervision, Lee actually still had to report to Walker and that Walker's harassing behavior continued. ECF No. 1 at ¶¶ 23–27.

Lee reported Walker's continued mistreatment to Geneva employees Wagner, Ceniceros, and Melissa Hajjar ("Hajjar"). ECF No. 1 at ¶ 28. Although several conference calls were scheduled to address Lee's concerns, all were ultimately cancelled. ECF No. 1 at ¶ 28.

At or around January 11, 2016, Walker stripped Lee of certain job duties, impeding her work performance. Specifically, Walker replaced Lee with Sara Salkind — a Caucasian, female contract employee for Geneva — to handle all communications between Geneva and the Internal Review Board ("IRB"). ECF No. 1 at ¶¶ 29–30.

On January 14, 2016, Lee complained to Robert Anderson, a DOD Non-Commissioned Officer in Charge, about Walker's discriminatory conduct. ECF No. 1 at ¶ 32. Anderson directed Lee to DOD's EEO office, among other persons designated to receive EEO complaints. ECF No. 1 at ¶ 32. On January 15 and 19, Lee forwarded Walker's communications to a number of employees, including Wagner, Hajjar, and Ceniceros (Geneva employees) and Tigiste Girma and Lisa Weiner (employer not identified in the Complaint). ECF No. 1 at ¶¶ 33–34. Lee also complained to Wagner, once again, on January 21, 2016, about Walker's discriminatory treatment. Seven days later, Lee was terminated for "performance issues." ECF No. 1 at ¶ 36. Prior to her termination, Lee had not received notice of her purported poor performance. ECF No. 1 at ¶ 36. A Caucasian woman, Kelly Hummer, replaced Lee. ECF No. 1 at ¶ 37.

After her termination, Lee received a letter from the Office of the Assistant Secretary of Defense Health Affairs dated February 26, 2016, noting deadlines for filing a formal EEOC complaint.  ECF No. 1 at ¶ 38.  While the letter was addressed to Lee, its contents made plain that the letter was not meant for her.  The letter mischaracterized aspects of Lee's complaints and termination, as well as included clear errors in milestone dates.  The letter incorrectly stated that Lee first contacted the EEO on July 22, 2015, and participated in "a final counseling interview [on August 9, 2015] . . . in connection with the claims [she] presented during the pre-complaint intake interview to [Dennis Redic]."  ECF No. 1 at ¶ 38.  In fact, Lee had not contacted anyone at EEO in July or August of 2015.  ECF No. 1 at ¶ 38.  Lee took no further action on her EEO complaint against DOD prior to retaining counsel, and the complaint was dismissed as a result.  ECF No. 1 at ¶ 38.

On October 18, 2016, the EEO granted Lee permission to reopen the matter; however, DOD reserved its right to raise the timeliness of Lee's formal complaint as a defense to the claims.  Lee timely filed a new complaint.  ECF No. 1 at ¶ 39.  On August 9, 2017, the EEOC issued a decision notifying Lee of her right to sue.  ECF No. 1 at ¶ 40.

Lee also submitted formal complaints against Geneva and HJF with appropriate equivalent state and local commissions.  Specifically, Lee filed a preliminary questionnaire with the Maryland Commission on Civil Rights ("MCCR") against Geneva on July 22, 2016.  ECF No. 32-2.  She then filed a Formal Charge of Discrimination on October 7, 2016, which was forwarded to the EEOC on December 15, 2016.  ECF No. 32-3.  Lee also filed a Charge of Discrimination against HJF with the Montgomery County, Maryland, Office of Human Rights ("MCMOHR") on April 5, 2017, which was forwarded to the EEOC on May 5, 2017.  ECF No. 18-2.  Lee thereafter filed this case against Defendants, alleging race and gender discrimination

claims for disparate treatment, hostile work environment, retaliation, and wrongful termination. *See generally* ECF No. 1.

## II. ANALYSIS

### a. The DOD Motion

DOD asserts that all claims against it must be dismissed because Lee failed to exhaust administrative remedies. The Court agrees. Federal employees complaining of discrimination are required to initiate contact with an EEO counselor within 45 days of the alleged discriminatory act, or in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1). To "initiate contact" under 29 C.F.R. § 1614.105(a)(1), an employee must contact an agency official logically connected with the EEO process, exhibit an intent to begin the EEO process, and allege that an incident in question involves discrimination. *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 569–70 (D. Md. 2002). The regulations further require that upon completion of the informal complaint process, the employee must file a formal complaint within fifteen calendar days of receiving a Notice of Right to File a Formal Complaint of Discrimination. 29 C.F.R. § 1614.106(b).

Although a plaintiff's failure to make contact with the EEO within these time periods is "tantamount to failure to timely exhaust all administrative remedies," this Court has held that it is not a "jurisdictional requirement and may be subject to the doctrine of equitable estoppel." *See Blount v. Thompson*, 400 F. Supp. 2d 838, 841 (D. Md. 2004), *aff'd sub nom.* 122 F. App'x 64 (4th Cir. 2005) (citing *Zorgafov v. Va. Med. Ctr.*, 779 F.2d 967, 969 (4th Cir. 1985). "However, the Government will only be estopped from asserting the time limit as a defense if plaintiff provides proof of affirmative misconduct on the part of the agency which prevented an employee from timely filing a complaint." *Id.* (citing *Zografov*, 779 F.2d at 969).

DOD now seeks dismissal because Lee failed to contact the EEO within the forty-five and fifteen day windows following her termination. ECF No. 37-1 at 10–12. Lee does not dispute that she was terminated on January 28, 2016, and that she did not make "initial contact" with DOD's EEO office until November 2, 2016, and filed her Formal Complaint on December 19, 2016, well beyond the regulations' deadlines. *See* ECF No. 1 at ¶ 5. Instead, Lee contends that her January 28, 2016 communication with an EEO counselor suffices to demonstrate that she intended to initiate formal EEO action. Alternatively, Lee argues that equitable estoppel bars dismissal. *See* ECF Nos. 1 at ¶ 38; 41-1 at 4, 9; 41-3; 41-4.

At the outset, the Court recognizes that the parties rely extensively on evidence that goes beyond the four corners of the Complaint on this point. *See* ECF No. 37-1 & 41. The Court retains "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Kelly v. Lease*, No. RDB-16-3294, 2017 WL 2377795, at *1 (D. Md. May 31, 2017) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004, 2011 Supp.)); *accord Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.*

Lee also urges the Court, by way of an affidavit submitted under Rule 56(d) of the Federal Rules of Civil Procedure, to allow further discovery prior to resolving DOD's motion. A Rule 56(d) affidavit affords the non-movant an opportunity to demonstrate " 'that, for specified reasons, [she] cannot present facts essential to justify [her] opposition.' " *Carter-El v. Oakley*, No. JFM-14-2545, 2015 WL 7012708, at *6 (D. Md. Nov. 10, 2015) (quoting Fed. R. Civ. P.

56(d)).  A "non-movant must provide a 'reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact,' " *Agelli v. Sebelius*, No. DKC-13-497, 2014 WL 347630, at \*9–\*11 (D. Md. Jan. 30, 2014) (quoting *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010).   Rule 56(d) is not a vehicle to "authorize 'fishing expeditions.' "  *Morrow v. Fareell*, 187 F. Supp. 2d 548, 551 (D. Md. 2002), *aff'd* 50 F. App'x 179 (4th Cir. 2002). Consequently, a court may properly deny a Rule 56(d) request " 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.' "  *Polastre-Jackson v. Colvin*, No. ELH-17-228, 2017 WL 6501800, at \*5 (D. Md. Dec. 15, 2017) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)).

Lee's Rule 56(d) submissions are at best conclusory and do not provide sufficient factual basis necessary to convince this Court that discovery would materially affect the outcome of DOD's motion.  Lee proffers only that discovery would show she  "made contact in a timely manner" and "took reasonable steps to exhaust her administrative remedies . . . [and] follow through with her administrative claim."  ECF No. 41-4 at ¶¶ 6–7.   As to timely contact, Lee does not proffer what additional facts would demonstrate that she made contact with the EEOC after her January 28, 2016 communication.  *See* ECF No. 41-1, 41-3, 41-4.  Rather, based on the EEOC documents provided thus far, Lee initially communicated to the EEOC that she wished to "make a complaint of discrimination" and  "request[] counseling in an attempt to resolve her issue."  *See* Lee Affidavit, ECF Nos. 41-3 at ¶¶ 12–13 & 37-2 at 6.  EEOC Counselor, Dennis Redic, then contacted Lee, to which Lee responded by email that she wished to "discuss things further," and then failed to make any contact with the EEOC.  Redic repeatedly tried to reach Lee to initiate the EEOC process.  ECF Nos. 41-3 at ¶ 13; 37-1, Exs. 2 , 5; 37-2.  Redic also

informed Lee that absent further action on her part, the EEO would formally close her case on March 1, 2016.  ECF No. 37-1, Ex. 4.  Lee made no contact thereafter.

Likewise, Lee has proffered no facts obtainable in discovery that would show she "took reasonable steps" to exhaust her claim.  Against the documentary evidence thus far submitted, it appears that Lee took *no steps* to exhaust her claim.  Lee, as the claimant, would be in the best position to affirm in her affidavit what other steps she took.  That her Rule 56(d) affidavit does not include any factual proffer in this regard renders it simply insufficient.

Lee further asserts that deposing Redic and obtaining "documentation" in discovery will generate disputed material facts as to the timeliness of her initial contact.  Again, vague general claims that discovery will produce helpful facts are not sufficiently particular to warrant additional discovery.  *Id.*; *see also Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006); *Richard v. Leavitt*, 235 F. App'x 167, 167 (4th Cir. 2007); *Carter-El*, 2015 WL 7012708, at *6.  The Court, therefore, will not grant additional discovery on the timeliness question because Lee has failed to show how discovery will generate any pertinent evidence in this regard.

Turning to the merits of DOD's motion, the Court finds that when viewing the evidence most favorably to Lee, her January 2016  EEO contact is insufficient to demonstrate an "an intent to begin the EEO process." *See Cook v. McHugh*, 193 F. Supp. 3d 866, 869–72 (M.D. Tenn. 2016) (holding the plaintiff did not timely "initiate contact" when he met an EEO specialist to discuss the complaint but did not follow-up on the process for eight months); *see also Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015); *Austin v. Winter*, 286 F. App'x 31, 33–36 (4th Cir. 2008); *Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980);  *Helen G., v. Esper*, EEOC Appeal No. 0120180149, 2018 WL 1045530, at *3–4 (2018); *Ivy E. v. Acosta*, EEOC

Appeal No. 0120171235, 2017 WL 3393855 (2017); *Complainant v. Hagel*, EEOC Appeal No. 0120140929, 2015 WL 227003, at *2–3 (2015); *Small v. USPS*, EEOC Appeal No. 0590289, 1999 WL 589571, at *1–2 (1999); *Moss v. Perry*, Appeal No. 019624722, 1997 WL 91106, at 2 (1997). Lee does not aver that she asked the EEOC to take any official action at that time. Nor did Lee follow up at all with the EEO counselor despite repeated efforts on the EEOC's part to maintain contact with Lee. Accordingly, the January 28 phone call alone does not reflect any intent to "begin the EEO process." *Welsh*, 83 F. Supp. 3d at 221.

Because Lee failed to exhaust timely her administrative remedies, "the Government will only be estopped from asserting the time limit as a defense if plaintiff provides proof of affirmative misconduct on the part of the agency which prevented an employee from timely filing a complaint." *Blount*, 400 F. Supp. 2d at 841 (citing *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992). The doctrine of equitable estoppel "examines the defendant's conduct and the extent to which the plaintiff [was] induced to refrain from exercising [her] rights." *Prelich v. Medical Resources, Inc.*, 813 F. Supp. 2d 654, 663 (D. Md. 2011) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127 (4th Cir. 1987)). Equitable estoppel "will not toll a filing period 'unless the employee's failure to file in a timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing [her] charge.' " *Id.* (quoting *Moret v. Green*, 494 F. Supp. 2d 329, 335–36 (D. Md. 2007)); *see also Dawkins v. Witt*, 318 F.3d 606, 611 (4th Cir. 2003) ("The Supreme Court has consistently denied efforts by litigants to estop the government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents.").

Lee asserts that equitable estoppel is appropriate here because Redic's February 26, 2016 letter included "grossly inaccurate information regarding [her] case." ECF No. 1 at ¶ 38. Because this communication was confusing, argues Lee, she "disregarded it" and "took no further action." ECF Nos. 1 at ¶ 38 & 41-3 at ¶14. DOD acknowledges that it provided a communication to Lee with incorrect dates, but emphasizes that DOD's EEO office consistently provided Lee with *correct* information regarding the applicable deadlines, and that Redic repeatedly attempted to assist Lee to no avail. ECF No. 37-1 at 6–10.

Critically, Lee does not allege that the incorrect communication was part of a *deliberate* effort by DOD to delay Lee's filing charges. *See* ECF Nos. 1 at ¶¶ 38–40, 41-3, 41-4. Rather, Lee acknowledges that on February 2, 2016, Redic provided her a copy of the EEO's "Aggrieved Rights and Responsibilities," which specifically informed Lee that she must pursue her claim "within **45 calendar days** of the date of the matter alleged to be discriminatory." ECF No. 41-7 (emphasis in original). Nor does Lee in any way claim that DOD engaged in "affirmative misconduct" preventing her from timely filing a complaint. *See* ECF Nos. 41-3 & 41-4 (Rule 56(d) affidavit attesting discovery will support "that Plaintiff took reasonable steps to follow-through with her administrative claim"). Based on the EEO's clear, unmistakable notice to Lee that she had 45 days from the date of the alleged discriminatory conduct to pursue formal EEOC remedy, the Court is hard pressed to find that the EEO's conduct justifies equitable estoppel. *Agelli*, 2014 WL 347630, at *9–11 (quoting *McWay*, 269 F.R.D. at 38); *see Austin v. Winter*, 286 F. App'x at 38–39 (citing rejecting equitable estoppel based on government negligence in the EEO context). DOD's motion for summary judgment for failure to exhaust administrative remedies is GRANTED.

### b.    Geneva's Motion to Dismiss

Geneva first argues that the Court lacks subject matter jurisdiction because Lee failed to exhaust administrative remedies.  Before a plaintiff may file suit under Title VII, she must file her claim with the EEOC or appropriate local agency. *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002) (citing 42 U.S.C. § 2000e–16(c); *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v. V.A. Medical Center*, 779 F.2d 967, 968–69 (4th Cir. 1985)); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012).  Failure to first file with the EEOC "deprives the federal courts of subject matter jurisdiction over the claim." *Kim v. Potter*, No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010); *accord Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir. 1995)); *Melendez v. Sebelius*, 611 F. App'x 762, 764 (4th Cir. 2015).  To ascertain whether a court retains jurisdiction, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)).

If a plaintiff first files a formal administrative complaint, the claims that plaintiff may ultimately raise before this Court are circumscribed by the initial complaint.  *Calvert Grp.,* 551 F.3d at 300; *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 716 (D. Md. 2013).  Those claims "reasonably related" to the administrative charge and which flow "from a reasonable administrative investigation," are also preserved for federal adjudication.  S*ydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012); *see also McCray v. Maryland Dep't of Transportation*, 662 F. App'x 221, 223 (4th Cir. 2016); *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d

658, 669 (4th Cir. 2015); *Calvert Grp.*, 551 F.3d at 300; *Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). "The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' . . . not precisely the same . . . ." *Id.* at 595 ((citation omitted); *accord Johnson v. SecTek, Inc.*, No. ELH-13-3798, 2015 WL 502963, at *4 (D. Md. Feb. 4, 2015).

However, if the plaintiff raises the basis for the claimed discrimination, such as race or gender, for the first time in federal court, the claim has not been exhausted and cannot proceed. *See Calvert Grp.*, 551 F.3d at 301 (plaintiff failed to exhaust claim for race, age, or sex discrimination because EEOC charge solely alleged retaliation); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC charge alleged only racial discrimination). This is so because permitting a party to advance a wholly new theory of recovery in court "would eviscerate the administrative charge filing requirement altogether by depriving the employer of adequate notice," and lead to a "failure to investigate by the responsible agency." *Evans*, 80 F.3d at 963 (internal quotation marks and citations omitted).

Geneva argues that Lee's gender discrimination claims exceed the scope of those preserved in her complaint filed with the Maryland Commission on Civil Rights ("MCCR"). ECF Nos. 18-1 at 9, 18-2 at 6, 32-3 at 1–2. Geneva notes that the MCCR complaint narrative does not include any allegations of gender discrimination, nor did Lee check the gender/sex box on the MCCR Charge of Discrimination form. ECF No. 18-2 at 6.

Lee does not dispute that she failed to allege gender discrimination to the MCCR. *See* ECF No. 27-1 at 6–7. Rather, Lee simply asserts that because "the events that support [Lee's] claim of racial discrimination are the same that support her claim for gender discrimination," she

satisfies the exhaustion requirement.  ECF No. 27-1 at 6–7.   Lee asserts nearly identical individuals and events to advance each discrimination claim.  ECF No. 27-1 at 6–7. Accordingly, Lee argues, the alleged gender discrimination is "reasonably related" to the race discrimination detailed in the Charge, it would have been discovered by a "reasonable administrative investigation."  ECF No. 27-1 at 12–13.   The Court must disagree.

"[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."  *Calvert Grp.*, 551 F.3d at 300.  Here, Lee's administrative charge in no way alerts the MCCR or Geneva that the claimed adverse conduct involved gender discrimination.  Nor can the court credit that the agency would automatically investigate potential gender bias simply because race discrimination was asserted.  Based on this logic, no complainant would need to identify the specific category of discrimination, for one category should automatically beget the next.

Moreover, Lee's complaint itself undermines any inference that gender discrimination would be at issue.  Indeed, Lee specifically identifies a Caucasian *woman* as a more-favorably treated comparator.   ECF Nos. 18-2 & 32-3 at 1–2; *compare Wilson v. Gates* No. RDB-09-1074, 2010 WL 2639877, at *4–5 (D. Md. June 29, 2010) (holding that plaintiff exhausted administrative remedies as to race discrimination claim despite EEO Complaint alleging only hostile work environment and retaliation claims, where narrative referenced race discrimination), *aff'd per curiam*, 427 F. App'x 265 (4th Cir. 2011).  This comparator highlights race as the discriminatory factor and indeed negates gender as a motivating force.  Accordingly, Count II, gender discrimination,[4] must be DISMISSED for failure to exhaust.

---

[4] This analysis also reaches HJF's motion to dismiss Count II on the same grounds.  *See* ECF Nos.1 8-1 & 18-2.

Geneva also argues that the remaining counts in the Complaint must be dismissed because Lee filed her Charge of Discrimination with MCCR more than 300 days after alleged "discrete act[s] of discrimination or retaliation." ECF No. 24-1 at 5. In a deferral state such as Maryland, a formal charge of discrimination against private-sector employers must be filed with the EEOC or an equivalent state agency within 300 days of the alleged unlawful acts. *Lane v. Walmart Stores E., Inc.* 69 F. Supp. 2d 749, 752 (D. Md. 1999); *see also Green v. Brennan*, 136 S. Ct. 1769, 1775 n.4 (2016). However, governing federal regulations permit the pertinent charge to be "amended to cure technical defects or omissions, including failure to verify the charge . . . . Such amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

Generally a claim may proceed where the claimant provided the agency detailed information as included in an "Intake Questionnaire" to the appropriate organization within the 300 day period, even if a formal charge was not signed and submitted until later. *See Lane*, 69 F. Supp. 2d at 752; *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). The information submitted, however, must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. 1601.12(b); *see also* 42 U.S.C. § 2000e–5(b); *Merchant v. Prince George's Cty., Md.*, 948 F. Supp. 2d 515, 522 (D. Md. 2013). Not every completed Intake Questionnaire is considered sufficiently detailed to constitute a charge. *Merchant*, 948 F. Supp. 2d at 520 (*citing Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 405 (2008)). Rather, the Court must examine the specific document submitted "from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Holowecki*, 552 U.S. at 402.

Lee argues that her completed Intake Questionnaire is sufficiently detailed so as to preserve as exhausted all alleged misconduct that took place in the 300 days prior to its submission, from September 26, 2015 to July 22, 2016.  The Intake Questionnaire alleges race discrimination and retaliation, harassment, hostile work environment, and discriminatory discharge.  ECF No. 32-2.  Lee also summarizes the factual basis for her claims, stating "my supervisor was extremely hostile towards me.  My complaints were ignored.  Shortly after complaining, I was fired based on a pretext."  *See* ECF No. 32-2 at 1–3.  Lee then provides contact information for the Human Resources representative at Geneva, and requests several remedies, including MCCR-facilitated mediation.  ECF No. 32-2.  Lee signs all forms and affirms, under penalty of perjury, that the Questionnaire's contents are accurate.  ECF No. 32-2; *compare Merchant*, 948 F. Supp. 2d at 520.

The Court finds that the intake questionnaire is sufficient to preserve all claimed misconduct occurring in the 300 days prior to its filing.  Lee identifies the basis for her claims and what remedial action is sought, and she verifies each form included with the intake questionnaire.  ECF No. 32-2; *see EEOC v. Phase 2 Investments, Inc.*, No. JKB-17-2463, 2018 WL 1851480, at *16 (D. Md. Apr. 17, 2018) (citing *Holowecki*, 552 U.S. at 402); *see also Bland v. Fairfax Cty., Va.*, 799 F. Supp. 2d 609, 615–17 (E.D. Va. 2011); *Thorington v. Sally Beauty Supply LLC*, No. 1:16-cv-626, 2017 WL 1954539, at *4–5 (E.D. Va. May 10, 2017); *cf. Merchant*, 948 F. Supp. 2d at 520; *Maynor v. Mt. Washington Pediatric Hospl.*, 93 F. Supp. 3d 434, 438 (D. Md. 2015) (intake form did not check a box indicating the type of discrimination, and did not request remedial action by the EEOC); *King v. Lowe's Home Ctrs., Inc.*, No. AW-08-3393, 2009 WL 3681686, at *3 (D. Md. Nov. 2, 2009) (questionnaire did not state the relief sought, nor for take action against the employer).  Accordingly, all events occurring after

September 26, 2015 may support her race discrimination charge. Geneva's motion, to the extent it seeks to exclude events occurring after September 26, 2015, is DENIED.

### c.      HJF's Motion to Dismiss

HJF moves to dismiss all remaining counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" to survive a motion to dismiss. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)). A complaint "need only give the defendant fair notice of what the claim is and

the grounds upon which it rests" so that the court can "infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Id.* (internal citations and quotations omitted). For example, the "plaintiff is not required to include allegations — such as the existence of a similarly situated comparator — that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citing *Swierkiewicz*, 534 U.S. at 511–12). However, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555).

HJF first argues that the Complaint must be dismissed in its entirety because Lee failed to allege that HJF was Lee's joint employer. *See* ECF No. 18-1 at 5. In this Circuit, a defendant is considered a joint employer where it "exercised the requisite amount of control for Title VII liability to hold." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 656 (D. Md. 2007); *see also Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015). The Court must consider the following factors in determining the question of control:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler*, 793 F.3d at 414. While no one factor of this analysis is dispositive, three factors are considered most significant to the "joint employer" determination: the power to hire and fire the employee, daily supervision of the employee, and where and how the work takes place. *Id.* at 414–15. "The basis for the finding that two companies are 'joint employers' is that 'one

employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Id.* at 408 (quoting *Torres-Negron v. Merck & Co.*, 488 F.3d 34, 40 n.6 (1st Cir. 2007)). The test is "highly fact-specific" to allow "for the broadest possible set of considerations in making a determination of which entity is an employer." *Id.* at 413–15; *see also Butler*, 793 F.3d at 415 (reversing summary judgment on question of joint employer status because "although ResourceMFG disbursed Butler's paychecks, officially terminated her, and handled employee discipline, it did not prevent [the defendant] from having a substantial degree of control over the circumstances of Butler's employment"); *Murphy-Taylor*, 968 F. Supp. 2d at 727–28 ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry," and is "a fact-bound question . . . not appropriate for resolution as a pure matter of law, before discovery.").

Bearing in mind that "Title VII should be liberally construed in light of its remedial purpose," and that this broad interpretation extends to the definition of "employer," the Complaint plausibly alleges HJF was Lee's joint employer. *See Takacs*, 473 F. Supp. 2d at 656. The Complaint specifically avers that HJF maintained control over many conditions of Lee's employment, that her duties were akin to the duties of HJF employees, and that she was supervised by Walker, an HJF employee. ECF No. 1 at ¶ 19. Walker directly and indirectly controlled critical aspects of Lee's employment, including with whom she could communicate and whether she could telework, take leave, or work overtime. ECF No. 1 at ¶¶ 16–21, 29. Walker conducted meetings with a "team" of both Geneva and HJF employees (including Lee), and dictated some uses of Lee's work equipment. ECF No. 1 at ¶¶ 26–27. Lee also complained to both HJF and Geneva employees about Walker's allegedly discriminatory treatment. ECF No.

1 at ¶¶ 25, 33, 36.  To be sure, the Complaint lacks specificity regarding other factors arguably beyond Lee's personal knowledge at this juncture, such as whether HJF assumed any responsibility for payroll, insurance, and taxes, or provided Lee with any training.  *See generally* ECF No. 1.  At the motion to dismiss stage, however, the Court will accept as true all facts as pleaded which allow the plausible inference that HJF controlled key aspects of Lee's employment, most notably through her direct supervisor, *an HJF employee.  See* ECF No. 1 at ¶¶ 10–29.  HJF's motion to dismiss is therefore DENIED.

HJF next moves under Rule 12(b)(6) to dismiss all counts "because each fails to allege at least one required element."  ECF No. 18 at ¶ 3.  The Court addresses each count in turn.

### i.  Count I: Racial Discrimination

Lee does not aver any direct evidence of discrimination. Accordingly, the Court must consider whether she has alleged facts sufficient to demonstrate: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) she was treated different from similarly situated employees outside the protected class.  *Coleman*, 626 F.3d at 190; *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016).   HJF does not dispute that Lee is a member of a protected class and that her job performance was satisfactory, but argues Walker's discriminatory acts as pleaded do not constitute "adverse employment action."  ECF No. 18-1 at 7–8; *see also* ECF No. 33.

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir.2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  Typical adverse employment actions are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."

*Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir.1999). That said, even where the employers'
conduct does not amount to an ultimate employment action, it may nonetheless be considered
sufficiently adverse if it plausibly had a tangible effect on the terms and conditions of
employment. *Thorn v. Sebelius*, 766 F.Supp.2d 585, 598 (D. Md. 2011), *aff'd*, 465 F.App'x 274
(4th Cir. 2012) (internal citation omitted).

Lee alleges that unlike similarly-situated Caucasian employees, she received "an
unreasonable workload and deadlines," including an "excessive amount of overtime," and was
forbidden from telecommuting or "taking any time off from work." ECF No. 1 at ¶¶ 17, 19. She
was also allegedly subjected to "micro-management [and] excessive criticism." ECF No. 1 at ¶
49.

HJF correctly argues that mere refusal to allow telecommuting is not actionable under
Title VII. *See, e.g. Carter v. Va. Dept. of Game & Inland Fisheries*, No. 3:16cv661, 2017 WL
4413192, at *13 (E.D. Va. Sept. 29, 2017). However, Lee avers much more. When taking the
pleaded facts as true and making all reasonable inferences in Lee's favor, Walker's "micro-
management," excessive criticism, and "an unreasonable workload," coupled with disparate
assignment of overtime work and denial of leave, created an "abusive environment likely to
'detract from employees' job performance, discourage employees from remaining on the job, or
keep them from advancing in their careers.'" *Strothers v. City of Laurel, Md.*, No. 17-1720,
2018 WL 3321317, at *8 (4th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23
(1993)); s*ee also Hishon v. King & Spalding*, 467 U.S. 69, 75–77 (1984); *Page v. Bolger*, 645
F.2d 227, 233 (4th Cir. 1981); *Allen v. Rumsfeld*, 273 F.Supp.2d 695, 705–06 (D. Md. 2003);
*Scott-Brown v. Cohen*, 220 F.Supp.2d 507, 509–511 (D. Md. 2002) *Camacho v. Colvin*, No. 13-

cv-1303-JKB, 2014 WL 2772314, at *6 (D. Md. June 17, 2014) . Lee has sufficiently pleaded adverse employment action.

Lee also sufficiently alleges that individuals outside the protected class were treated more favorably. *See* ECF No. 1 at ¶¶ 17, 19, 48, 49; *Booth*, 186 F. Supp.3d at 485–86. " 'An inference of race or gender discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances.' " (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)); *see also Carter v. Md. Aviation Admin.*, No. CIV. CCB-04-3065, 2005 WL 1075328, at *4 n.1 (D. Md. May 6, 2005). Here, Lee alleges that her HJF "counterpart" on the team project, Carlos Morales, a Caucasian male, had essentially the same job responsibilities and did not suffer Walker's "excessive criticism," "unreasonable workload," and "micro-management." ECF No. 1 at ¶¶ 15, 17, 19, 24, 26, 27. Lee also avers that other Caucasian co-workers were not forced to work an "excessive amount of overtime" and were granted greater leave, including paid leave. Taking all allegations as true, Lee has stated a plausible discrimination claim. ECF No. ¶ 17. HJF's motion to dismiss Count I, therefore, is DENIED.

### ii. Count III: Hostile Work Environment

To establish a Title VII hostile work environment claim, a plaintiff must aver facts which plausibly establish that she experienced (1) unwelcome conduct, (2) on account of her race, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment; and (4) the conduct is imputable to the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001). "[H]arassment need not be accompanied by a contemporaneous statement of animus to be actionable under Title VII– rather, the connection between animus and conduct may be inferred from the totality of the

circumstances." *Strothers*, 2018 WL 3321317, at *7. Courts must apply "common sense" and "appropriate sensitivity to social context" to the "constellation of surrounding circumstances" to determine whether a plaintiff was subject to unwelcome conduct based on race. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). Although "a plaintiff need not plead facts sufficient to prove [her] case," at the motion to dismiss stage, the plaintiff "must allege facts that support a claim for relief." *Muhammed v. Provident Bankshares Corp.*, 2008 WL 11363700, at *3 (D. Md. Aug. 29, 2008) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765–66 (4th Cir. 2003)).

HJF contends that Lee failed to aver plausibly that she experienced sufficiently "severe or pervasive" conduct on account of her race. ECF No. 18-1 at 11–12. Lee has not pleaded direct evidence of racial animus, such as anyone making overtly racially derogatory comments to her; but she has averred that Walker consistently treated white employees more favorably. ECF No. 1 at ¶¶ 19, 24, 26, 56 (e.g., Carlos Morales was not subjected to the same "excessive" criticism, overtime, and micro-management, and was permitted greater flexibility in the workplace); *see also* ECF No. 1 at ¶¶ 29, 30 (alleging that Sara Salkind, a Caucasian female, did not receive diminished work responsibilities). Taken as true, these allegations support a reasonable inference that Walker's treatment of Lee was racially motivated.

As to whether this conduct was sufficiently "severe or pervasive" to state a hostile work environment claim, Lee alleges that Walker inundated her with "abnormally frequent" telephone calls, emails, and text messages, forbade her from taking any time off from work, piled on the work unreasonably, forced her to work an excessive overtime, consistently criticized Lee in front of coworkers, and reduced her job responsibilities. *See* ECF No. 1 at ¶¶ 15, 17, 19, 26, 31, 33. Taking these facts as true and "examining the totality of the circumstances," it is plausible that

Walker's conduct was not only race-based, but sufficiently severe or pervasive as to alter the conditions of Lee's employment. *See Strothers*, 2018 WL 3321317, at *7–8; *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) ("[T]he phrases terms, conditions or privileges of employment' in [Title VII] is an expansive concept."); *accord Nesbitt v. Univ. of Md. Med. Sys.*, No. WDQ-13-0125, 2013 WL 6490275, at *5–*6 (D. Md. Dec. 6, 2013).

HJF also argues that the hostile work environment was not "imputable to HJF," because Lee "failed to sufficiently plead that HJF [was her] joint employer." ECF No. 18-1 at 12. Plaintiff "must show that the employer was 'negligent in controlling working conditions' – that is, the employer 'knew or should have known about the harassment and failed to take effective action to stop it.'" *Strothers*, 2018 WL 3321317, at *9 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Lee alleges HJF specifically knew of Walker's "ongoing discriminatory behavior," and failed to take effective action to stop it. ECF No. 1 at ¶ 26. At the motion to dismiss stage, Lee has pleaded sufficient facts to infer plausibly that HJF is vicariously liable. HJF's motion to dismiss count III is DENIED.

### iii. Count IV: Retaliation

To state a claim for retaliation, a plaintiff must establish that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action. *Holland*, 487 F.3d at 218. Protected activity encompasses complaints lodged to superiors about workplace misconduct actionable under Title VII. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *see also Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003). Adverse employment action for purposes of a retaliation claim is any act which would "dissuade[] a reasonable worker from making or supporting a charge of

discrimination." *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 490, 494–95 (D. Md. 2013); *see also Thornton v. Dep't of Pub. Safety & Corr. Serv.*, 2017 WL 3592677, at *15 (D. Md. Aug. 18, 2017) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).

HJF contends that Lee has not alleged that she engaged in any protected activity directed at or involving HJF, or that HJF retaliated against her. *See* ECF No. 18-1 at 12–13. The Court disagrees. The Court has already determined HJF to be a joint employer as pleaded in the Complaint. Further, Lee has included a sufficient factual basis to infer that HJF, through its own agents and employees, received Lee's complaints and took adverse action in response.

Lee particularly asserts that on two occasions in January 2016, she complained about Walker's "discriminatory behavior" to HJF Project Administrator, Tigiste Girma, and HJF Human Resources Generalist, Lisa Weiner. Thereafter, Lee experienced an increasingly hostile work environment, decreased employment opportunities, and ultimately was terminated so as to "dissuade others from complaining of discrimination." ECF No. 1 at ¶¶ 29, 31, 69–75. These allegations support the plausible inference that HJF retaliated against Lee for complaining of Walker's discriminatory conduct in a manner that would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Wonasue*, 984 F. Supp. 2d at 494–95.

Further, the temporal proximity between Lee's complaints, her deteriorating employment conditions, and her ultimate termination allow the plausible inference that she was treated adversely because she complained about racially hostile misconduct. *See, e.g. Strothers*, 2018 WL 3321317, at *12; *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). The motion to dismiss Count IV is thus DENIED.

### iv. Count V: Wrongful Termination

HJF lastly challenges the wrongful termination, arguing that the foundation played no role in her firing. Similar to the other claims, the wrongful termination count is predicated on the theory that her January 28, 2016 firing was pretext for race discrimination. *See* ECF No. 1 at ¶¶ 70 & 80. To survive dismissal, plaintiff must aver facts which plausibly show that: (1) she is a member of a protected class; (2) she suffered the adverse action of termination; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Holland*, 487 F.3d at 214.

Even though HJF controlled essential terms and conditions of Lee's employment, this claim is on decidedly different footing because Lee also *very specifically* identifies Geneva as the *sole* entity responsible for terminating her. *See* ECF No. ¶¶ 36, 68, 80, 8. The Court recognizes that other related claims against HJF are proceeding on a theory of joint employer liability. The United States Court of Appeals for the Fourth Circuit has not yet considered whether a joint employer may be held liable for an adverse employment action, such as termination, undertaken by the other employer. However, other circuits to consider the issue have uniformly determined that "joint employer liability does not by itself implicate vicarious liability," and "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions." *Torres-Negro*, 488 F.3d at 40 n.6 (emphasis in original); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015); *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 811–12 (7th Cir. 2014); *Llampallas v. Mini Circuits, Lab., Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998); *Lima v. Adecco and/or Platform Learning, Inc.*, 375 F. App'x 54, 55 (2d Cir. 2010). District courts

within the Fourth Circuit have followed suit.  *See, e.g. Velasquez v. Sonoco Display &*

*Packaging, LLC*, 2018 WL 1773128, at *3–4 (M.D. N. Ca. Apr. 11, 2018); *Gray v. BMW Mfg.*

*Co. LLC*, No. 7:15-cv-4133-BHH-JDA, 2017 WL 928402, at *4 (D. S. Ca. May 31, 2017);

*Crump v. U.S. Dept. of Navy*, No. 2:134cv707, 2016 WL 901262, at *1–2 (E.D. Va. Mar. 3,

2016).  Enforcement Guidance issued by the EEOC further supports that an employee must make

a showing of discrimination specific to each employer and claim.  *See* Equal Employment

Opportunity Commission, EEOC Notice No. 915.002, Enforcement Guidance: Application of

EEO Laws to Contingent Workers Placed by Temporary Agencies and Other Staffing Firms, at

2260 (1997).

    Accepting Lee's allegations as true, the Court cannot plausibly infer that HJF played a

role sufficiently material to support a wrongful termination claim against it.  Thus, Lee's claims

can proceed only to the extent Lee can aver sufficient additional facts which demonstrate that

HJF played a legally significant role in her termination.  The Court thus dismisses the wrongful

termination claim as to HJF without prejudice and will grant Lee 14 days with which to amend

her Complaint on this Count as to HJF, if possible.

## IV. CONCLUSION

    For the foregoing reasons, Geneva's motion to dismiss is GRANTED in part and

DENIED in part, HJF's motion to dismiss is GRANTED in part and DENIED in part, and the

Department of Defense's motion to dismiss or for summary judgment is GRANTED.  A separate

Order follows.

7/17/2018                                                                    /s/
Date                                                      Paula Xinis
                                                          United States District Judge